UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BOBBY JOHNSON,
    *Plaintiff*,

v.                                                          No. 3:17-cv-1479 (JAM)

CITY OF NEW HAVEN *et al.*,
    *Defendants*.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND COMPLAINT

Plaintiff Bobby Johnson has sued the City of New Haven and individual defendants Clarence Willoughby, Michael Quinn, Francisco Ortiz, Patrick Redding, Herman Badger, and Andrew Muro for wrongful arrest, conviction, and imprisonment. *See* Doc. #23. Johnson now moves for leave to amend his complaint principally to add as a defendant New Haven Police Department Sergeant Christopher Mahon, who Johnson alleges supervised Willoughby and Quinn's investigation into the murder for which Johnson alleges that he was wrongfully convicted. Doc. #138 at 1–2.

I will deny the motion to amend except to the extent that it is unopposed with respect to dismissal of Count 6 in its entirety. I conclude that Johnson did not exercise due diligence in failing to add Mahon as a defendant at a much earlier time in this litigation. I also conclude that allowing Johnson to amend the complaint at this late date would work substantial and unfair prejudice to the remaining defendants. Lastly, I conclude that the proposed amendment would be futile, because the statute of limitations has now elapsed for Johnson's proposed claims against Mahon.

## BACKGROUND

The following facts are set forth as alleged by Johnson in his amended complaint. Doc. #23. Herbert Fields was shot and killed in New Haven on August 1, 2006. *Id.* at 5 (¶ 15). New Haven police investigated the killing, including an investigation by detectives Clarence Willoughby and Michael Quinn. *Ibid.* (¶ 16). Francisco Ortiz was chief of the New Haven Police Department at the time. *Id.* at 3 (¶ 9). Herman Badger served as Officer in Charge of the department's detective bureau until August 1, 2006, when he became Assistant Chief. *Id.* at 4–5 (¶ 13). Andrew Muro led the detective bureau from then until April of 2007, and Patrick Redding then became Officer in Charge. *Ibid.* (¶¶ 12, 14).

Johnson alleges that Willoughby and Quinn engaged in numerous acts of misconduct during the investigation, including obtaining false confessions from him and deliberately discounting evidence that a different suspect—Richard Benson—was responsible for the murder. *See id.* at 7–8 (¶¶ 25–28), 12–13 (¶¶ 39–42). Johnson's amended complaint also alleges that Quinn and Willoughby engaged in improper interrogation tactics against Johnson's friend Kwame Wells-Jordan in September of 2006, while working alongside "an unidentified NHPD supervisor." *Id.* at 9 (¶ 30). The complaint similarly alleges that the unnamed "NHPD supervisor" participated in improper interrogation tactics against Wells-Jordan a second time in November of that year. *Id.* at 14 (¶ 45); 18–19 (¶ 60).

Johnson spent nine years in prison for the charge of murdering Fields. In 2010, he brought a *habeas corpus* petition in state court to develop evidence of his innocence, and in 2015, the Connecticut Superior Court at New Haven vacated his conviction, nolled the charges against him, and allowed Johnson to be released from prison. *Id.* at 28 (¶¶ 82–85).

On September 1, 2017, Johnson sued defendants alleging numerous violations of his civil rights. *See* Doc. #1. Johnson filed an amended complaint on October 26, 2017. Doc. #23. He currently maintains claims against Willoughby and Quinn for fabricating evidence and coercing confessions against him, as well as for malicious prosecution and a civil rights conspiracy (Counts 1–3, 5), *id.* at 29–32 (¶¶ 91–106), 35–36 (¶¶ 115–18); claims against all individual defendants for violating his due process and fair trial rights (Count 4), *id.* at 33–35 (¶¶ 107–14); a supervisory liability claim against Ortiz, Redding, Badger, and Muro (Count 7), *id.* at 37–38 (¶¶ 123–28); a municipal liability claim against the City of New Haven (Count 8), *id.* at 38–41 (¶¶ 129–37); and various claims under Connecticut state law (Counts 9–15), *id.* at 42–49 (¶¶ 138–75).

On November 1, 2017, the parties submitted their Rule 26(f) Planning Report, which stipulated to a deadline of December 29, 2017, for amending the pleadings or joining parties. Doc. #24 at 5. I adopted the deadline in the initial scheduling order the following day. Doc. #25.

More than a year passed before Johnson filed the instant motion on February 11, 2019, to amend his complaint in order to add Mahon as a defendant alongside Willoughby and Quinn to Counts 1–5 and to Counts 9–13 (alleging individual—rather than municipal—liability under Connecticut law). Doc. #138 at 1. Johnson argues that Mahon served as Quinn and Willoughby's direct supervisor when they investigated the Fields murder, and that his counsel only learned of Mahon's role from the respective depositions of Muro and Badger that took place on January 4 and 22, 2019. *Id.* at 2. Johnson also argues that he only learned the full scope of Quinn's misconduct in the investigation of Benson—such as bypassing key pieces of evidence—at a deposition of Quinn on November 28, 2018. *Id.* at 5.

3

Johnson's proposed second amended complaint alleges that Mahon was the "NHPD supervisor" involved in the Wells-Jordan interrogations, Doc. #138-2 at 10–11 (¶ 31), 15–16 (¶ 48), 21 (¶ 65), that Mahon was present when Quinn mishandled an interview with Benson, *id.* at 14–15 (¶¶ 44–45), that Mahon supervised and received contemporaneous reports from Quinn and Willoughby of every mishandled interview or interrogation in the Fields investigation, *id.* at 17 (¶¶ 53–54), and that Mahon specifically called Willoughby in to work on the Fields investigation, *id.* at 20 (¶ 63).

## DISCUSSION

Because Johnson's proposed amendment comes well after the deadline for amended pleadings in the Court's scheduling order, Johnson must show good cause to modify the deadline for amending his complaint under Federal Rule of Civil Procedure 16(b)(4). *See BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017). "[T]he primary consideration is whether the moving party can demonstrate diligence," as well as "other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

### *Diligence*

Defendants argue that Johnson has not been diligent in seeking leave to amend because, defendants contend, Johnson had ample notice of Mahon's role as Quinn's supervisor. Defendants begin by pointing to numerous documents associated with Johnson's initial prosecution that were subsequently entered as exhibits during his *habeas* proceeding in 2012 and also disclosed to Johnson during discovery in November of 2017. *See* Doc. #147 at 3–5; Doc. #147-2. These include an arrest warrant application bearing Mahon's signature as a supervisor,

Doc. #147-1, a police incident report documenting Johnson's arrest bearing the same and noting that Mahon was present for the arrest, Doc. #147-3, a police incident report about the Benson interrogation indicating Mahon's rank and that he was present, Doc. #147-4, an arrest warrant application for Wells-Jordan bearing Mahon's supervisory signature, Doc. #147-5, and an interview report involving another witness—Craig Pouncey—indicating that Mahon was present, Doc. #147-6. Moreover, defendants also point to an internal affairs report that Johnson received during discovery in this case in April 2018 indicating that Mahon was Willoughby's immediate supervisor at the time a different investigation was assigned to Willoughby in November of 2006. Doc. #147-7.

Johnson contends that these submissions do not reflect a lack of diligence. Doc. #150 at 2. Johnson argues that Mahon's signature is illegible on some documents, that the documents mentioning Mahon's presence also mention other officers and do not detail his supervisory role, that any discussion of Mahon being Willoughby's supervisor arose in the context of a different homicide investigation, and that Johnson could not have been aware of Mahon's conduct as it related to the Benson interview until November of 2018, because he did not know the full extent of Quinn's misconduct until that time. *Ibid.*

I do not agree. While Johnson claims that he meant to sue the closest supervisor of the Fields investigation whom he mistakenly thought to be Muro, *see ibid.*, the fact that Johnson's amended complaint discusses the involvement of an unnamed "NHPD supervisor" in the Wells-Jordan interrogations indicates that, even in the fall of 2017, Johnson had some idea that a mid-level supervisory position existed between Quinn and Willoughby and whoever was serving as the head of the detective bureau. Doc. #23 at 9 (¶ 30), 14 (¶ 45), 18–19 (¶ 60). Similarly, the internal affairs document's mention of Mahon's role as Willoughby's "immediate" supervisor in

5

November of 2006—a time when Johnson alleges that Muro headed the detective bureau—was enough to put Johnson on notice that the New Haven Police's detective hierarchy contained more than one level. Doc. #147-7 at 4; *see* Doc. #23 at 5 (¶ 14).

Although it is true that the internal affairs document does not itself specify Mahon's role over the Fields murder investigation, taken together with the documents indicating Mahon's rank as a sergeant (and signature legibly identifying sergeant as a supervisory position, *see* Doc. #147-1 at 3), and presence at Fields investigation arrests and interrogations, *see* Doc. #147-3 at 8; Doc. #147-4 at 2; Doc. #147-5 at 37; Doc. #147-6 at 2, Johnson had evidence to understand that Mahon was an intermediate-level supervisor over the investigation by April 2018.

While Johnson also argues that he was unaware of the full extent to which Quinn mishandled the investigation of Benson until November 2018—and thus the extent to which Mahon allowed that misconduct to occur—Johnson already alleges that defendants bypassed evidence probative of Benson's guilt. Doc. #23 at 13 (¶ 42). Learning more about *how* Quinn may have done so could be useful to Johnson in fleshing out his claim at trial, but if Johnson seeks to add Mahon as a defendant because of his role in supervising that misconduct, Mahon's presence and involvement should have been clear to Johnson by April.

Accordingly, while Johnson may not have known about all details of Mahon's involvement prior to the December 2017 deadline for amending the pleadings, he still was on notice of Mahon's intermediate supervisory role at least nine months before filing the present motion to amend. I am therefore not persuaded that Johnson demonstrated diligence in seeking to modify the scheduling order. *See Fabian v. City of New York*, 2018 WL 2138619, at *11 (S.D.N.Y. 2018) (denying leave to amend when plaintiffs "had at least nine months within which

they could have requested leave to amend their complaint to name the John Doe officers prior to the close of discovery."); *Lamphear v. Potter*, 2012 WL 3043108, at *3 (D. Conn. 2012) (same).

### *Prejudice*

Defendants also argue that allowing amendment of the complaint at this late date would result in substantial prejudice to them. I agree. It is apparent that adding Mahon as a defendant to this case would result in delay of many more months as well as substantial new discovery at significant cost, including discovery by Mahon that could well require the re-deposition of witnesses who have already been examined. *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

### *Futility*

Even if I were to conclude that Johnson acted with due diligence and that there would not be substantial prejudice if he were permitted to amend his complaint to add Mahon at this late date, I would deny the motion to amend on grounds of futility in light of the apparent lapse of the statute of limitations for the proposed claims against Mahon. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000); *Russell v. Aid to Developmentally Disabled, Inc.*, 2018 WL 5098819, at *3 (2d Cir. 2018) (summary order). Johnson's claims pursuant to § 1983 are subject to a three-year statute of limitations. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). The same holds true for his state tort claims. Conn. Gen. Stat. §52-577; *see also* Conn. Gen. Stat. §§ 52-557n; 52-584; 7-465 (possible application of two-year statute of limitations). His claims all accrued—at the latest—when the prosecution against him was nolled in 2015, and now it is more than three years later in 2019. *See McDonough v. Smith*, 898 F.3d 259, 267 (2d Cir. 2018) (cause of action for tainted evidence accrues when fabricated evidence is used); *Spak v. Phillips*, 857 F.3d 458,

464 (2d Cir. 2017) (cause of action for malicious prosecution accrues upon *nolle prosequi* as favorable termination).

I do not agree that Johnson's claims against Mahon should relate back to when his complaint was filed. Under Fed. R. Civ. P. 15(c)(1)(C), an amendment relates back when it changes a party or the name of a party against whom a claim is asserted, and "if the newly named party '(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Moore v. City of Norwalk*, 2018 WL 4568409, at *2 (D. Conn. 2018) (quoting Fed. R. Civ. P. 15(c)(1)).

Johnson characterizes as a mistake his failure to have named Mahon as a defendant: that he understood Muro to have been the closest-level supervisor of the Fields investigation, and now understands Mahon to have been involved instead. Doc. #150 at 2. But this does not constitute the sort of mistake that can warrant relation back under Rule 15(c)(1)(C).

The Second Circuit has made clear that, while Rule 15(c) allows relation back because of mistake, "the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013) (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468–69 (2d Cir. 1995)). Although the test for mistake under Rule 15(c) looks to "what the party to be added knew or should have known," *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010), there is no reason to think that Mahon knew or should have known that Johnson meant to sue him when he sued Muro. Johnson's amended complaint identifies Muro by his title as Officer in Charge of the detective bureau, not as "the closest-level supervisor of the Fields investigation." Doc. #23 at 5 (¶ 14). Indeed, the Johnson complaint recognizes that an additional unnamed

8

police supervisor was present at the Wells-Jordan interrogation, but Johnson did not sue that officer as a "John Doe" defendant, "a routine course from which defense counsel could have acquired the requisite knowledge" that he intended to pursue an individual claim against that officer. *Scott v. Vill. of Spring Valley*, 577 F. App'x 81, 82 (2d Cir. 2014) (distinguishing failure to sue any John Doe defendant from diligent efforts to identify and name John Doe defendants in *Archibald v. City of Hartford*, 274 F.R.D. 371, 380 (D. Conn. 2011)).

The proposed amendments to Johnson's complaint further indicate that Johnson means to add Mahon as a new defendant, rather than merely to correct a mistake in suing Muro. Johnson's proposed amendments only add claims against Mahon where he is sued alongside Willoughby and Quinn. *See* Doc. #138-2 at 31–37 (Counts 1–5), 45–50 (Counts 9–13). None of his proposed amendments remove Muro as a defendant, and the one count alleging supervisory liability under § 1983 still includes Ortiz, Redding, Badger, and Muro, but Johnson does *not* seek to add Mahon as a defendant. Doc. #138-2 at 39 (Count 7).

Johnson's proposed amendments are therefore not about correcting a mistaken identification of which defendant engaged in the same course of conduct, but rather seek to add claims against a new defendant that Johnson passed up on the opportunity to name—even pseudonymously—at a much earlier time. Because there can be no relation back absent a genuine "mistake" about the party's identity within the meaning of Rule 15, that rule does not apply here to salvage any of Johnson's potential claims against Mahon from being barred by the statute of limitations.

9

## CONCLUSION

For the reasons stated above, plaintiff's motion for leave to file a Second Amended Complaint (Doc. #138) is GRANTED in part as to Count 6 and DENIED in part as to the addition of New Haven Police Department Sergeant Christopher Mahon as a defendant.

It is so ordered.

Dated at New Haven this 12th day of March 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge