UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BOBBY JOHNSON | : | NO.: 3:17-CV-01479 (AVC) |
| v. | : | |
| CITY OF NEW HAVEN, ET AL | : | MAY 5, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION RE RULING ON MOTION FOR SUMMARY JUDGMENT [DOC. 227]**

**I.    BACKGROUND**

On April 27, 2020, the Court's Ruling on the Defendants' Motions for Summary Judgment [Doc. 227] was entered on the docket, granting in part and denying in part the City of New Haven and supervisory defendants' Motion for Summary Judgment [Doc. 167]. In its ruling, the Court concluded that an issue of fact existed as to whether the City of New Haven has a custom or practice of violating constitutional rights, and whether the city had adequate training, or was deliberately indifferent to violation of constitutional rights, sufficient to result in civil rights liability. Pursuant to Local Rule 7(c), the City of New Haven now moves for reconsideration of the denial of summary judgment as to the Monell claims against it in Count Eight. As is more fully set forth below, reconsideration is warranted because: (1) there is no issue of fact as to whether the City's training was adequate and supervisors did not act with deliberate indifference to violation of constitutional rights; and (2) on the undisputed facts, no reasonable jury could find that there was a custom and practice by City police officers to violate constitutional rights that was so permanent, widespread and pervasive that it was the functional equivalent of the policy of the City.

II.     **STANDARD OF REVIEW**

The standard for granting a motion for reconsideration is strict. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. Reconsideration is justified: (1) where there has been an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). The fact that the court overlooked controlling law or material facts may also entitle a party to succeed on a motion to reconsider. See Eisemann v. Greene, 204 F.3d 393, 395 n. 2 (2d Cir.2000) (per curiam) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.") (citations omitted).

A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." Horsehead Resource Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F.Supp. 287, 289 (S.D.N.Y. 1996) (internal citations and quotations omitted). Ultimately, however, the question of whether to grant a motion for reconsideration is a discretionary one, and the court is not limited in its ability to reconsider its own decisions prior to entry of final judgment. See Virgin Atl., 956 F.2d at 1255; see also Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir.1996) (noting that "a district court is vested with the power to revisit its decisions before the entry of final judgment and is free from the constraints of Rule 60 in so doing.").

### III. LAW AND ARGUMENT

#### A. THE COURT SHOULD RECONSIDER IT'S RULING THAT THERE IS SUFFICIENT EVIDENCE FOR A JURY TO DETERMINE THE ISSUE OF WHETHER THE CITY WAS DELIBERATELY INDIFFERENT IN THE TRAINING AND SUPERVISION OF ITS OFFICERS

"Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). It is only where such a pattern is "sufficiently persistent" or "widespread" as to acquire the force of law that it may constitute a policy or custom within the meaning of Monell. Id.

The operative inquiry for establishing deliberate indifference "is whether the facts suggest that the policymaker's inaction was the result of a "conscious choice" rather than mere negligence." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 128 (2d Cir. 2004), quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989); see also Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997) ("deliberate indifference ... requir[es] proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction). The "plaintiffs' evidence must establish … that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was "obvious," … and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Id.

When examined in the proper context pursuant to this controlling precedent, the plaintiffs' proffered evidence is insufficient to withstand summary judgment. The

3

undisputed evidence establishes that Ortiz was not present in the interrogation room at the time of Johnson's September 3, 2006 or September 15, 2006 interviews, and thus did not witness any alleged improper or coercive interrogation techniques that the plaintiff contends were used against him.  (See P's Resp. to Rule 56(a)1 Statement [Doc. 187] at ¶ 47.)  Moreover, the record is wholly devoid of any evidence that Ortiz witnessed any alleged improper or coercive tactics by Willoughby or Quinn, let alone that Ortiz was present for or witnessed any alleged improper or coercive tactics by any other officer within the NHPD during his tenure as Chief.

Additionally, the record is wholly devoid of any prior complaints of improper or coercive tactics, or impropriety in the documentation or misappropriation of CI funds, made against officers within the NHPD, including Willoughby and Quinn, from the time Ortiz became Chief of Police in 2002 through the plaintiff's arrest on September 15, 2006.

Moreover, the undisputed evidence in the record further establishes that each NHPD officer is required to successfully complete the state mandated police officer certification training program, as well as recertification training every 3 years, covering all areas of law enforcement.  (See P's Resp. to Rule 56(a)1 Statement [Doc. 187] at ¶¶ 125-126.)  The undisputed evidence further establishes that each of the defendants successfully completed the POST training program and were up to date with all recertification training.  (Id. at ¶¶ 127-129.)  In addition, the undisputed evidence establishes that every NHPD officer received: training on interrogations pursuant to the Reid method (accusatory method) of interrogations, which was the national standard in the 1990's and 2000's (id. at ¶¶ 131-132); training on obligations to turn over

4

exculpatory evidence (id. at ¶ 133); and are trained to follow NHPD procedure for using, paying, documenting and notifying prosecutors about CI's (id. at ¶ 134).

Given the undisputed evidence as to the continual and updated training provided to all officers, and the absence of complaints of misconduct by Willoughby or Quinn prior to the plaintiff's arrest on September 15, 2006, it cannot be said as a matter of law that it was obvious that more or better supervision of the co-defendants was necessary to prevent the violation of the plaintiff's constitutional rights as of the time he was interrogated or arrested. Nor does the evidence establish that the City turned a blind eye to the fact that an obvious risk existed that Willoughby or Quinn would violate the plaintiff's constitutional rights as alleged. On the contrary, the undisputed evidence in the record establishes that both Willoughy and Quinn were well aware of the parameters of permissible interrogation tactics and their Brady obligations.

The undisputed facts are that Chief Ortiz demonstrated the opposite of deliberate indifference. When an allegation of misconduct was brought to his attention in 2007 that Detective Willoughby had mishandled informant payment records, Chief Ortiz opened an investigation and eventually had Willoughby arrested. Willoughby was acquitted on the charges, but the message to the Department was unmistakable that any hint of impropriety would not be tolerated. There is no evidence whatsoever that would be admissible at trial that Chief Ortiz had knowledge and acquiesced to misconduct by a New Haven Police Officer in such a way that it sent a message to the Department that misconduct by officers would not be punished; and the message so clear that it became de facto policy of the New Haven Police Department.

The proper inquiry for the plaintiff's policy-maker <u>Monell</u> theory of liability requires a conscious choice of inaction by Ortiz as to prior instances of misconduct, which does not exist.

First, any claim that Ortiz failed to "timely" investigate Willoughby's informant misconduct after it was discovered in June 2007 does not satisfy the test of whether Ortiz consciously disregarded a risk that caused the violation of the plaintiff's constitutional right here.  The alleged misconduct in 2007 (Bennett homicide investigation) post-dated the Fields' homicide investigation, interviews and arrest of Bobby Johnson in <u>September 2006</u>.  All of the alleged constitutional violations by Detectives Quinn and Willoughby occurred in the course of the investigation, interview and arrest of Bobby Johnson in the fall of 2006, making Monell liability on this theory impossible, because as a matter of law nothing Chief Ortiz did or did not do in 2007 can fairly be said to have sent a message to the rank and file in 2006 that misconduct will be condoned.

In addition 3 of the 6 cases cited as instances of misconduct that occurred over the prior 15 years and are claimed as evidence of a pervasive practice to violate constitutional rights (addressed in the next section) occurred prior to Chief Ortiz becoming Chief (those 3 are Ham, Valentine and Lewis).  Of the remaining 3 cases (Carvaughn Johnson, J'Veil Outing and Pagan), the claims were baseless in the Outing and Johnson case, and in the Pagan case Chief Ortiz was a defendant who was granted summary judgment but Judge Arterton.  None were adjudicated against any NHPD officer, were based on unsworn hearsay, and as a matter of law were not instances where Chief Ortiz condoned misconduct.

6

Finally, there is no instance of Detective Quinn or Detective Willoughby being found to have coerced a witness or withheld exculpatory evidence or fabricated evidence that Chief Ortiz condoned at any time prior to the investigation and arrest of Bobby Johnson.  There simply is no basis to impute liability to the City of New Haven based on the conduct of Chief Ortiz under Monell and its progeny.

**B.   THE COURT SHOULD RECONSIDER ITS FINDING THAT THERE IS SUFFICIENT EVIDENCE FOR A JURY TO DETERMINE THE ISSUE OF WHETHER A CUSTOM OF VIOLATING CONSTITUTIONAL RIGHTS PROXIMATELY CAUSED THE ALLEGED UNCONSTITUTIONAL CONDUCT BY DEFENDANTS QUINN AND WILLOUGHBY**

The Supreme Court has clearly established a high threshold for holding a municipality liable for civil rights violation on a custom or practice theory.  Based on the undisputed facts the plaintiff cannot meet this high standard of proof.  Under the custom and practice theory of *Monell* claims, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); see also Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"); Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir.2000) (discussing Jett). To prevail on this theory of municipal liability, a plaintiff must prove that the custom at issue is **permanent and well-settled**.  (emphasis added)  See Praprotnik, 485 U.S. at

127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law' " (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation marks omitted))); Davis, 228 F.Supp.2d at 346 (explaining that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; **well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status.")**  (emphasis added)  As the Supreme Court emphasized in *Monell,* Congress enacted § 1983 to impose liability on municipalities "because of the persistent and widespread discriminatory practices of state officials," and out of recognition that such practices could become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 691 (citation and internal quotation marks omitted).

In the case at bar, plaintiff has identified only 6 arrests by City detectives over a 15 year period, where misconduct is claimed--and  the last of those  involved alleged misconduct occurring after Bobby Johnson was arrested, so it has no evidential value on the pervasive practice issue.  In all 6 cases, (complainants Eric Ham, Darrel Valentine, Scott Lewis, Carvaugh Johnson, L'Veil Outing and Ernest Pagan—discussed at pp. 45-59 of Defendants brief on Summary Judgment Doc . 167-2) there was merely an allegation, and no adjudication, of  misconduct against a City police officer.  Nor was there any exploration of motive of any of the accusers, and the accusations were random complaints made against individual officers that represented just 6 out of

8

15,000-20,000 major felony crimes handled by the City's approximately 30 full time detectives.  The plaintiff offers no evidence of merit regarding any of the accusations, but even if true, the 6 random events over that period of time represent less than 1/2500th of the major felony cases handled by City Detectives.  As a matter of law, that cannot constitute a permanent, well settled practice of the City.  See also, Walker v. City of New York, 2014 WL 1259618 (SDNY 2014) ("To support the sweeping conclusion that the NYPD has "a custom and practice of using excessive force after individuals are already in custody," plaintiff's counsel relies on ten complaints (nine of which she filed) "for similar wrongful conduct" in different locations and precincts in the City in the last decade.  These complaints are plainly insufficient to plausibly allege a custom or practice "so persistent and widespread as to practically have the force of law."); Sroga v. Hondzinski, 2017 WL 3278916 (That is, even if the incidents Sroga pleads had happened to eight different individuals, then still, the incidents are insufficient to make out a policy .  This is because the incidents occurred over the course of more than a decade—any time from 2003-2014.  This comes out to less than one unlawful confidential VIN check every year.  One incident every year would hardly be enough to put any city policy maker on notice that a pervasive widespread pattern of wrongful conduct was taking place.).

      Accordingly, the City submits that summary judgment should enter in its favor on the custom theory of civil rights liability.

**IV.    CONCLUSION**

      For the foregoing reasons, the defendant, City of New Haven, requests that the court reconsider its ruling and enter summary judgment in its favor as to the plaintiff's Monell liability claim set forth in Count Eight.

DEFENDANT,
CITY OF NEW HAVEN


By_____/s/ Thomas R. Gerarde_____
   Thomas R. Gerarde (ct05640)
   Beatrice S. Jordan (ct22001)
   Jacqueline P. McMahon (ct30606)
   Howd & Ludorf, LLC
   65 Wethersfield Avenue
   Hartford, CT  06114-11921
   Ph:  860 249-1361
   Fax:  860 249-7665
   E-mail:  tgerarde@hl-law.com
   E-mail:  bjordan@hl-law.com
   E-mail:  jmcmahon@hl-law.com

## **CERTIFICATION**

     This is to certify that on May 5, 2020, a copy of the foregoing Memorandum of Law in Support of Motion for Reconsideration re Ruling on Motion for Summary Judgment [Doc. 227] was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


        _____/s/ Thomas R. Gerarde_____
        Thomas R. Gerarde