UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOBBY JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>The CITY OF NEW HAVEN, et al.,<br><br>    Defendants. | Case No. 3:17-cv-01479-AVC |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF NEW HAVEN'S MOTION FOR RECONSIDERATION**

Defendant City of New Haven does not come close to providing a basis to reconsider the Court's careful summary judgment decision. "Motions for reconsideration are disfavored unless a party can show that the Court overlooked facts or law in a manner that has led to a clear error or manifest injustice." *Gorss Motels Inc. v. Sprint Commc'ns Co., L.P.*, No. 3:17-CV-546 (JAM), 2020 WL 1303175, at *1 (D. Conn. Mar. 19, 2020). Thus, a party moving for reconsideration must "set[] forth concisely the controlling decisions or data the movant believes the Court overlooked." D. Conn. L. R. Civ. P. 7(c). Despite acknowledging that strict standard, the City has not—and cannot—identify a single controlling precedent or factual issue overlooked by the Court's well-reasoned summary judgment order. Instead, the City simply repackages arguments the Court has already explicitly considered and rejected. That is improper. "A motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Mujo v. Jani-King Int'l, Inc.*, 16-cv-1990 (VAB), 2020 WL 42116, at *3 (D. Conn. Jan. 3, 2020) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 648 F.3d 36, 52 (2d Cir. 2012)).

As the Court has already concluded, the summary judgment record is replete with evidence that Defendant Chief Francisco Ortiz, the New Haven Police Department's (NHPD) final policymaker, directly participated in and condoned the misconduct causing Plaintiff Bobby Johnson's wrongful conviction. These facts alone raise a triable question of fact regarding the City's *Monell* liability. But, as the Court also found, evidence of the NHPD's longstanding and widely acknowledged culture of investigative misconduct provides an additional basis for *Monell* liability. The City's motion utterly fails to provide a basis to reconsider that careful decision, which correctly applied the governing law. It should be denied.

## I.     The City's motion does not meet the standard for reconsideration.

"Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Grp. PLC*, 11-cv-1383-AWT, 2016 WL 10459389, at *1 (D. Conn. Mar. 31, 2016). "Reconsideration is not intended for the court to reexamine a decision or the party to reframe a failed motion." *Mujo*, 2020 WL 43116, at *3 (quoting *Fan v. United States*, 710 F. App'x 23, 24 (2d Cir. 2018)). Indeed, "[i]t is not appropriate to use a motion to reconsider solely to re-litigate an issue already decided." *Fed. Hous. Fin. Agency*, 2016 WL 10459389, at *1; *see also Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 147–48 (E.D.N.Y. 2010) ("Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion."). The only grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to prevent manifest injustice." *Musante v. USI Ins. Servs., LLC*, 16-cv-799-RNC, 2018 WL 442801, at *1 (D. Conn. Jan. 16, 2018) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)).

The City concedes this standard but cannot meet it. There has been no intervening change in the law governing *Monell* claims—the most recent controlling precedent the City cites is a 2007 Second Circuit case. Nor is there any new evidence. Discovery is closed, and the City rests on the summary judgment record. Unable to point to any facts or law the Court overlooked, the City simply repackages a series of arguments that the Court already explicitly rejected. For example:

- The City reiterates its claim that the "record is wholly devoid of any evidence that Chief Ortiz witnessed any alleged improper or coercive tactics," D.E. 234-1 at 4, but the Court found "evidence of Ortiz's involvement in day-to-day operations [and] an issue of fact with respect to whether Chief Ortiz was present for the Wells-Jordan interrogation and took part in the alleged coercion." D.E. 227 at 34.[1]

- The City re-argues that Chief Ortiz's six-month delay in disciplining Defendant Willoughby's criminal informant misconduct could not have contributed to Johnson's wrongful conviction, D.E. 234-1 at 6, but the Court found evidence that a prompt investigation in April 2007, when the misconduct was discovered, could have prevented Johnson's July 19, 2007 guilty plea and his October 26, 2007 reaffirmation at sentencing, D.E. 227 at 34.[2]

- The City again asserts that six other instances of NHPD misconduct identified at summary judgment are insufficient for *Monell* liability, D.E. 234-1 at 6–8, but the Court has already considered and rejected that argument, concluding that "Johnson has presented sufficient evidence to create a material issue of fact with respect to the culture in the NHPD at the time of the conduct at issue and the existence of a policy or custom pursuant to *Monell*." D.E. 227 at 35, 38, 40.

There is no basis for the Court to undertake the "extraordinary remedy" of reconsideration. *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n*, 2016 WL 10459389, at *1. The City is not entitled to a "second bite at the apple." *Mujo*, 2020 WL 42116, at *3.

---

[1] All docket citations refer to the ECF pagination.
[2] Defendants assert that Chief Ortiz did not become aware of the misconduct until June 2007, but a jury could conclude that he learned of the misconduct as early as April 2007, when a state prosecutor raised questions about Willoughby's use of informants in the Ernie McClendon prosecution. *See* D.E. 179 (Pl.'s SJ Br.) at 39–40. But even if Ortiz only learned of the misconduct in June 2007, when Willoughby's falsified informant voucher came to light, timely intervention could have prevented Johnson's July 2007 guilty plea, or, at the very least, his reaffirmation of his plea at his October 2007 sentencing. Once started, the internal affairs investigation took a mere 41 days to substantiate the allegations against Willoughby.

## II. The City's motion fails on the merits, raising factual arguments that are properly jury questions.

Defendant's rehashed arguments also fail on their merits. Repeating the errors in its summary judgment motion, the City again ignores evidence of Chief Ortiz's personal participation in and endorsement of his subordinates' unconstitutional misconduct, which alone provide a basis for *Monell* liability. And the City again attempts to turn the summary judgment standard on its head by drawing inferences in its own favor and minimizing Plaintiff's evidence of widespread prior misconduct. As the Court correctly observed in its order, "the parties largely dispute the underlying conduct in this case," and, while the City will be free to make its factual arguments to the jury at trial, it may not do so on summary judgment. D.E. 227 at 34–35.

The City concedes, as it must, that a municipality is liable under *Monell* when a final policymaker's inaction in the face of unconstitutional misconduct "was the result of a 'conscious choice' rather than mere negligence." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (Sotomayor, J.). In *Amnesty*, the Second Circuit reaffirmed the longstanding principle that "because a single action on a policymaker's part is sufficient to create a municipal policy, a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability." *Id.* at 127; *see also Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (holding a plaintiff may prove a *Monell* claim "by showing either that…a final policymaker…directly committed or commanded the violation of the plaintiff's federal rights…or that while the policymaker himself engaged in facially lawful action, he indirectly caused the misconduct of a subordinate municipal employee.") (internal quotation marks and alteration omitted).

As the Court has already recognized, there is ample evidence that Chief Ortiz, NHPD's final policymaker, personally participated in this investigation and encouraged his officers to

4

coerce Johnson's false confession. D.E. 227 at 33–35. A reasonable jury could conclude that Chief Ortiz called Willoughby back from vacation and assigned him to "crack" Plaintiff—to coerce his confession—because he knew Willoughby, who claimed a 100% solve rate, used the same unconstitutional tactics in every case. D.E. 179 (Pl.'s SJ Br.) at 35–36. Indeed, Willoughby had been assigned homicides out-of-turn many times in the past in order to get confessions. *Id.* A jury could also conclude that because of his personal interest in the case—the victim, Fields, was friends with high-ranking NHPD brass—Chief Ortiz kept close tabs on the investigation, sometimes receiving multiple updates a day, and understood that Plaintiff's confession had been coerced. *Id.* And a jury could conclude that Chief Ortiz was personally present for and participated in the coercive interrogation of Plaintiff's co-defendant, Wells-Jordan. *Id.* at 35–37. In *Amnesty*, it sufficed to show that the policymaker "witnessed (and perhaps encouraged) the unconstitutional conduct," 361 F.3d at 128. Here, the evidence shows that Chief Ortiz took a much more active role—and failed to take obvious, minimally necessary steps to address his subordinates' misconduct. *See Cash v. Cnty. Of Erie*, 654 F.3d 324, 338 (2d Cir. 2011) ("[A] particular context might make the need for training or supervision so obvious that a failure to do so would constitute deliberate indifference.") (internal quotation marks omitted).

    The City trumpets Chief Ortiz's categorical denial that he was ever involved in misconduct. But a jury is not required to believe this self-serving disavowal, and thus the Court may not credit it on summary judgment. *See, e.g.*, *Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019) (holding the Court is "required to draw in [Plaintiff's] favor all inferences that could reasonably be drawn" and "disregard the contrary statements from [defendants] that a jury would not be required to believe").

Similarly, the City's efforts to excuse Chief Ortiz for his delay in disciplining Willoughby's informant fabrications requires viewing the evidence in the light most favorable to *Defendants*, also impermissible. The evidence establishes that Chief Ortiz knew of Willoughby's misconduct as early as April 2007, but, despite understanding the issue required immediate investigation, he took no action until December 2007, when the misconduct came to the attention of an NHPD outsider, a prosecutor, who demanded an investigation. *See* D.E. 179 (Pl.'s SJ Br.) at 39–42. As the Court found, by then, any intervention was too late to help Johnson, who had pleaded guilty in July 2007 and reaffirmed that plea at his October 2007 sentencing. *See* D.E. 227 at 34. Far from "demonstrat[ing] the opposite of deliberate indifference" as the City claims, D.E. 234-1 at 5, Chief Ortiz's eight-month delay in disciplining Willoughby sent the message that misconduct would be tolerated unless and until it was discovered by an outsider.

Finally, the City's rehashed argument that Plaintiff has not identified enough prior examples of misconduct to find an unconstitutional custom entirely misses the point. There is no need to prove a prior pattern of constitutional deprivations if the municipal policymaker is on actual or constructive notice of the risk that unconstitutional injury will occur. *See Jones v. Town of E. Haven*, 691 F.3d 72, 81–82 (2d Cir. 2012) ("To establish deliberate indifference, a plaintiff must show that a policymaker official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action…."). But the prior misconduct here is particularly egregious. Plaintiff has identified three NHPD officers, including Willoughby, who were found to have persistently violated constitutional norms in multiple investigations before and during Plaintiff's wrongful prosecution. *See* D.E. 179 (Pl.'s SJ Br.) at 47–57.[3] These

---

[3] The City complains that some of the identified misconduct took place before Ortiz became chief, but this fact is irrelevant to its *Monell* liability. The relevant inquiry focuses not on the knowledge of any particular policymaker regarding past misconduct but whether the "assertion of a number of such claims put *the City* on notice that there was a possibility that its police officers" had committed misconduct. *McCants v. City of Newburgh*, 14-cv-556-VB,

repeated, historical constitutional violations not only put the municipal policymakers on notice of the risk of constitutional injury in this case, they also illustrate what other evidence has shown— that the NHPD fostered a culture where officers like Willoughby could repeatedly take liberties with constitutional rights without any consequence. *See Amnesty*, 361 F.3d at 128 (requiring the consideration of plaintiffs' allegations "as a whole" and reversing where "the district court treated each allegation…as an isolated act…."). A reasonable jury could conclude the NHPD's culture of turning a blind eye to misconduct emboldened Defendants to cause Plaintiff's wrongful conviction. *See, e.g.*, *Jeffes*, 208 F.3d at 63–64 (holding that a municipality's failure to "forestall, halt, or redress" widespread misconduct caused plaintiff's injuries). As the Court has already found, that, too, is enough for *Monell* liability. *See* D.E. 227 at 40 (finding "a material issue of fact with respect to the culture in the NHPD at the time of the conduct at issue and the existence of a policy or custom pursuant to *Monell*").[4]

## CONCLUSION

Defendants' efforts to rehash arguments the Court has already rejected is inappropriate in a reconsideration motion and fail on their merits. As the Court previously found, Plaintiff's *Monell* claims should proceed to trial.

---

2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (emphasis added) (quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)); *see also Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) ("The appropriate inquiry in this *Monell*-type claim focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees on that practice."). As Ortiz admitted in his deposition, the pattern established by the prior misconduct cases must have come to the attention of the chiefs that preceded him. *See* D.E. 179 (Pl.'s SJ Br.) at 53. Moreover, evidence shows that Chief Ortiz knew more about these prior cases than the City is willing to admit. For example, Ortiz had personal knowledge of Scott Lewis's wrongful prosecution, which preceded his term as chief, because he took part in the investigation and testified at least three times against Lewis. *See id.* at 54–55.

[4] Plaintiff did not argue, and the Court did not find, a *Monell* claim premised solely on a "failure to train," as the City asserts here. As the Court properly concluded in its summary judgment order, the training Defendants did receive is irrelevant to the *Monell* claim here—that Chief Ortiz and other municipal policymakers were aware of a culture of persistent investigative misconduct yet took no action. *See* D.E. 227 at 33–40.

7

Dated: May 13, 2020                                   Respectfully Submitted,

/s/ Kenneth Rosenthal
**Kenneth Rosenthal** (ct05944)
Green & Sklarz LLC
700 State Street
New Haven, CT 06511-1746
Tel: 2032858545
Email: krosenthal@gs-lawfirm.com
*Attorney for Plaintiff Bobby Johnson*

/s/ Emma Freudenberger
**Emma Freudenberger**
**Rick Sawyer**
Neufeld Scheck & Brustin, LLP
99 Hudson St., 8th Floor
New York, NY 10013
Tel: 2129659081
Fax: 2129659084
Email: emma@nsbcivilrights.com
*Attorneys for Plaintiff Bobby Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this *Opposition to Defendant the City of New Haven's Reconsideration Motion* was served via ECF on May 13, 2020, on all counsel of record.

/s/ Emma Freudenberger
*Attorney for Plaintiff Bobby Johnson*